Mr. Randall Mathis Director, Department of Pollution Control and Ecology 8001 National Drive P.O. Box 8913 Little Rock, AR 72219-8913
Dear Mr. Mathis:
This is in response to your request for an opinion on the following questions:
 1. Are the Solid Waste Management Districts created by Act 752 of 1991 required to comply with state procurement statutes in the contracting for goods and services?
 2. Are the Solid Waste Management Districts created by Act 752 of 1991 restricted in the ability to enter into valid long-term contracts (in excess of one year) in a similar way as those restrictions apply to cities and counties?
It is my opinion that the answer to your first question is "yes." Solid Waste Management Districts are required to comply with state procurement statutes in the contracting for goods and services.
The question of whether solid waste management districts are required to comply with procurement laws set out in the Arkansas Purchasing Law (A.C.A. §§ 19-11-201 to -805) depends upon whether the districts are to be considered "state agencies." Section19-11-207(a) states that the Purchasing Law "shall apply to every expenditure of public funds by this state, acting through a state agency as defined in § 19-11-203, under any contract." Section19-11-203(25) (Cum. Supp. 1991) defines "state agency" as:
 [A]ny office, department, commission, council, board, bureau, committee, institution, legislative body, agency, government corporation, or other establishment or official of the executive, judicial, or legislative branch of this state, except exempt agencies in their procurement of items not subject to the Arkansas Constitution, Amendment 54. `State agency' includes exempt agencies when any agency or exempt agency procures any item subject to the Arkansas Constitution, Amendment 54.
Thus, the issue is whether the solid waste management districts constitute an "establishment . . . of the executive, judicial, or legislative branch of this State." A.C.A. § 19-11-203(25) (Cum. Supp. 1991).
It is my opinion that the regional districts would likely be considered an establishment of a branch of state government and thus regarded as state agencies which are subject to the requirements set out in the state purchasing law.
While there may be an argument that the regional districts would not fall within the definitional purview of "state agency" based on Fagan Electric Co. v. Housing Authority, 216 Ark. 932,228 S.W.2d 39 (1950) or Muse v. Prescott School District,233 Ark. 789, 349 S.W.2d 329 (1961), it is my opinion that these cases are clearly distinguishable. The governmental units reviewed inFagan and Muse were clearly intended to be agencies largely independent of state oversight and review. Regional solid waste management districts are not intended to have the same independence. In Fagan, the court found that a housing authority was not a state agency and thus was not within the reach of the competitive bidding requirements of A.C.A. §22-9-203. The court based its conclusion in part on the fact that the State has apparently reserved little, if any, control over the local housing authorities. Similarly, in Muse, the court held that a school district was not an agency of the state within the meaning of the Workmen's Compensation Act. The court based this decision primarily on the fact that the school district functioned in a quasi-independent manner from the state, and because the state's connection with the districts was limited to bringing them into existence.
Whereas the state apparently retained little control over housing authorities in Fagan, the same cannot be said in the case of the regional solid waste management districts. The Arkansas Pollution Control and Ecology Commission is authorized to prescribe procedures and regulations to guide the operation of the solid waste management boards. A.C.A. § 8-6-708(1) (Cum. Supp. 1991). All assessments of need must be approved by the state Department of Pollution Control and Ecology. A.C.A. §8-6-716(a) (Cum. Supp. 1991). Remedial plans developed by the solid waste management boards also must be submitted to the Department for approval. A.C.A. § 8-6-717(a) (Cum. Supp. 1991). Additionally, a portion of the funding for the solid waste boards is derived from grants made available by the state Department of Pollution Control and Ecology for construction and operation of waste tire processing facilities. A.C.A. § 8-9-405(a)(1) (Cum. Supp. 1991). The waste tire grant fund is made up from a $1.50 fee imposed upon each new tire sold within the state and $1.00 fee on all waste tires imported into the state, as well as moneys appropriated by the General Assembly, any federal government moneys designated to enter the fund, and moneys received as a gift or donation to the fund. A.C.A. § 8-9-404 (Cum. Supp. 1991).
Nor, in my opinion, can the waste management districts be likened to the school districts in Muse, in that the regional districts are not able to function independently without state control and review. As set out in the preceding paragraph, the regional districts must rely at least partially on state grant funds to operate, and they must rely on the state Department of Pollution Control and Ecology for must of their operational needs. Any assessment of need or solid waste plans must be approved by the state Department. The state's connection with the regional districts is obviously not limited to bringing the districts into existence, but is, instead, a continuing, closely interrelated and supervisory one.
Finally, neither the Fagan nor Muse decisions dealt directly with the Arkansas Purchasing Law. Fagan dealt with the public works bidding statutes and the Must decision did not pertain to procurement statutes at all, but was, rather, a workers' compensation case. Neither case can be relied upon for the proposition that the regional districts do not fall within the definition of "state agency" for purposes of applicability of the state purchasing law.
It is thus my opinion that the solid waste management districts would be considered state agencies under state procurement laws. The districts were legislatively created, and thus are "establishment[s] of the executive, judicial, or legislative branch of this state." The districts are not able to operate on their own without the aid of assistance from the state. They receive some funding from the state; they are dependent upon the state Department of Pollution Control and Ecology for their rule making and operational assistance. The state retains absolute veto authority over all assessments and plans of the districts. The state has thus reserved considerable control over them. In sum, it is my conclusion that the districts would fall within the ambit of the definition of "state agency" under the procurement statutes, and thus are subject to those provisions in contracting for goods and services.[1]
In response to your second question, it is my opinion that the solid waste management districts would in all likelihood be restricted in their ability to enter into long-term contracts.
While the Solid Waste Management Act itself appears to reflect no intent by the legislature to restrict the districts in their ability to enter into long-term contracts, the districts may nevertheless be restricted in their contracting ability by other statutory or constitutional provisions.
The general prohibition against contracts for commodities or services for periods of more than five years, which is set out at § 19-11-238 in the Arkansas Purchasing Law, would, in all likelihood, operate to inhibit the solid waste management districts in their contracting abilities. This section states in relevant part:
 (a) Specified Period. Unless otherwise provided by law, a contract for commodities or services may be entered into for periods of not more than five (5) years if funds for the first fiscal year of the contemplated contract are available at the time of contracting. Payment and performance obligations for succeeding fiscal years shall be subject to the availability and appropriation of funds therefor.
As concluded above in response to your first question, it is my opinion that the regional districts are subject to the provisions of the state purchasing law, and therefore this provision regarding multi-year contracts would be applicable to the districts. In answer to your specific question, however, this proviso would apparently not prevent a district from entering a contract in excess of one year, as long as the contract did not extend past the five year period authorized in § 19-11-238.
The districts' ability to contract on a long-term basis might be restricted in other instances, as well, by Article 12, § 4 of the Arkansas Constitution. This section states in relevant part:
 The fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis, and no county court or levying board or agent of any county shall make or authorize any contract or make any allowance for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made; nor shall any county judge, county clerk or other county officer, sign or issue any scrip, warrant or make any allowance in excess of the revenue from all sources for the current fiscal year; nor shall any city council, board of alderman, board of public affairs, or commissioners of any city of the first or second class, or any incorporated town, enter into any contract or make any allowance for any purpose whatsoever or authorize the issuance of any contract or warrants, scrip, or other evidences of indebtedness in excess of the revenue for such city or town for the current fiscal year; nor shall any mayor, city clerk or recorder, or any other officer or officers, however designated, of any city of the first or second class or incorporated town sign or issue scrip, warrant or other certificate of indebtedness of excess of the revenue from all sources for the current fiscal year. [Emphasis added.]
An argument in favor of Article 12, § 4 restricting the regional districts from entering long-term contracts may center on the fact that the regional boards are comprised of county and city agents and officers who may not, pursuant to Article 12, § 4, authorize the issuance of any contract in excess of the revenues for the fiscal year.
This argument might successfully be countered, however, with the assertion that although the regional board is made up of representatives of the county and city, no county or city revenues are being brought into play for the purposes of the restrictions of Article 12, § 4. If the board member, who also happens to be a representative of the county or city, is acting solely as an agent for the board in making a board contract, and it is clear that funding for the board's project is done not through local revenues of the county or city but through rents, fees and charges of the board as authorized in A.C.A. § 8-6-714, Article 12, § 4 would likely not be applicable.
In sum, the general prohibition in the Arkansas Purchasing Law against contracts for commodities or services for periods of more than five years would, in all likelihood, inhibit the solid waste management districts in their contracting abilities. Similarly, Article 12, § 4 would likely restrict the districts from entering long-term contracts in those instances where the district board is comprised of representative of the county or city and funding is accomplished through local revenues.
Sincerely,
WINSTON BRYANT Attorney General
RG/WB:cyh
[1] To the extent, however, that your question pertains to bond issues, apparently no public bidding is required of the solid waste management districts for bond issues. Arkansas Code of 1987 Annotated §§ 8-6-801 to -814 (Cum. Supp. 1991) authorizes regional solid waste management boards to issue bonds for the payment of project costs. Section 8-6-802(b) (Cum. Supp. 1991) states: "[T]he acquisition, construction, reconstruction, enlargement, equipment, or operation and maintenance of projects under the provisions of this subchapter need not comply with the requirements of any . . . laws pertaining to public bidding. . . ." It thus seems clear that if a solid waste management district avails itself of the power to issue bonds as authorized by the above Code sections, public bidding is not required.